# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SUZANNE P. PEDIGO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-2513 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Suzanne P. Pedigo has filed a Motion for Summary Judgment [Doc. # 9] ("Plaintiff's Motion") and a brief in support [Doc. # 10] ("Plaintiff's Brief"). Defendant Michael J. Astrue, Commissioner of Social Security, also filed a Motion for Summary Judgment [Doc. # 11] ("Defendant's Motion"). The motions now are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **granted**, Defendant's Motion should be **denied**, and that this case should be **remanded** to the agency.

## I. BACKGROUND

### A.     Procedural Background

Pedigo filed an application for Title II disability insurance benefits with the Social Security Administration ("SSA") on June 6, 2007. She alleges disability beginning on October 25, 2002. After being denied benefits initially and on reconsideration, Lottinger timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ William H. Helsper held a hearing on September 30, 2008, in Fort Worth, Texas.[1] Todd M. Harden, a vocational expert, appeared and testified at the hearing. In a decision dated January 15, 2009, the ALJ denied Pedigo's application for benefits.[2] On January 30, 2009, Pedigo requested review of the ALJ's decision by the SSA's Office of Hearings and Appeals. On June 5, 2009, the Appeals Council denied Pedigo's request for review, rendering the ALJ's determination final. Pedigo filed this case on August 6, 2009, seeking judicial review of the Commissioner's denial of her claim for benefits.

### B.     Factual Background

Pedigo's application claimed disability as a result of various physical and mental impairments. Her alleged physical impairments—hypertension, moderate

---

[1]     R. 22-49 (hearing transcript).

[2]     R. 11-21 (ALJ decision).

obstructive sleep apnea, dyslipidemia, and chronic superficial gastritis— are not at issue before this Court. Pedigo's history of mental illness is set forth briefly below.

On Pedigo's alleged onset date of October 25, 2002, she was hospitalized for three days after reporting anxiety, depression, and alcohol use, and was diagnosed with major depressive disorder, recurrent, and personality disorder NOS.[3] By June 2004 she had improved with medication; in July 2004 her diagnosis was changed to bipolar disorder I, mixed.[4]

In May 2005, Pedigo's diagnosis was changed to major depressive disorder. She did well until April 2006, when she was hospitalized for three days for suicidal thoughts and depression. She was diagnosed upon discharge with bipolar disorder, most recent episode depressed, in partial remission.[5]

In February 2007, Pedigo's diagnosis was changed to bipolar disorder NOS with a seasonal (winter) component to depression, chronic.[6] Her condition stabilized during 2007 and early 2008. In September 2008 she was hospitalized for four days

---

[3]   R. 14; R. 211-214, 240.

[4]   R. 14; R. 467.

[5]   R. 14; R. 943-47.

[6]   R. 14; R. 326.

reporting suicidal ideation.[7]

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[8] Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[9] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

---

[7] R. 14; R. 1047-76; R. 1159-1176.

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[9] FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[10] *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[11] "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[12] It is more than a mere scintilla and less than a preponderance.[13]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[14] In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[15] If the Commissioner's findings are supported by substantial evidence, they

---

[11]  *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[12]  *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[13]  *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[14]  *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[15]  *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

are conclusive and must be affirmed.[16] Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[17] The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[18] In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[19]

## IV.  ANALYSIS

### A.  Statutory Basis for Benefits

Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[20] "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[16]  *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[17]  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[18]  *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[19]  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[20]  42 U.S.C. § 423(c) & (d).

lasted or can be expected to last for a continuous period of not less than 12 months."[21]

### B. Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[22] The claimant has the burden to prove disability under the first four steps.[23] If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[24] Once the Commissioner

---

[21] 42 U.S.C. § 423(d)(1)(A).

[22] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

[23] *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[24] *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

makes this showing, the burden shifts back to the claimant to rebut the finding.[25] A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[26]

In this case, the ALJ determined that Pedigo last met the insured status requirements on December 31, 2008—her "date last insured," or DLI. At Step One of the analysis, he found that she had not engaged in substantial gainful activity during the relevant period, *i.e.*, between her alleged onset date of October 25, 2002, and her DLI of December 31, 2008.[27] At Step Two, he determined that she suffered from one severe impairment, bipolar I disorder, and that her most recent episode was "depressed, moderate."[28] However, at Step Three, he found that her impairment did

---

[25]   *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[26]   *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

[27]   R. 13.

[28]   *Id*. The ALJ rejected Pedigo's arguments that she suffered from other severe impairments, finding no credible evidence that the following impairments had more than a minimal effect on her ability to perform work-related activities: hypertension; moderate obstructive sleep apnea; dyslipidemia; and chronic superficial gastritis. R. 15. He also found that Pedigo's "previous diagnoses" were not severe impairments, in particular, major depressive disorder, recurrent, severe without psychotic features; personality disorder NOS; bipolar disorder I, mixed; bipolar disorder, most recent episode depressed, severe with psychotic features; bipolar disorder, most recent episode depressed, in partial remission; bipolar disorder NOS; bipolar I disorder, most recent episode (or current) depressed, severe, without mention of psychotic behavior; anxiety; and possible agoraphobia. *Id*.

not meet or medically equal an impairment listed in the Social Security regulations.[29]

Before proceeding to Step Four, the ALJ found that, through her DLI, Pedigo had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, with the nonexertional limitation that "she could perform only non-complex work requiring no interaction with the public and only incidental contact with coworkers."[30] At Step Four, he found that Pedigo was unable to perform her past relevant work as an executive secretary, personnel manager, and operations manager.[31] At Step Five, he determined that jobs existed in significant numbers in the national economy that Pedigo could have performed.[32] He therefore held that she was not disabled during the period from October 25, 2002, through December 31, 2008.[33]

### C. Plaintiff's Argument for Reversal

Pedigo contests the ALJ's finding at Step Five, arguing that the ALJ erred by basing his finding solely on the Medical-Vocational Guidelines (Grid Rules) rather than on the opinion of a vocational expert.

---

[29] R. 16 (citing Listings 12.04 and 12.06).

[30] R. 17.

[31] R. 19.

[32] R. 20.

[33] R. 20.

At Step Five, the burden is on the Commissioner to show that Pedigo was capable of gainful employment despite her impairments.[34] An ALJ often relies on the Grid Rules to assess whether work exists in the economy that a claimant, given his or her RFC, can perform. An ALJ may rely exclusively on the Grid Rules when the claimant "suffers only from exertional impairments," or when "the claimant's nonexertional impairments do not significantly affect his residual functional capacity."[35] However, when a claimant suffers from nonexertional impairments that have a significant effect on the RFC, an ALJ must rely on "expert vocational testimony or other similar evidence" to meet the Commissioner's Step Five burden:

> This Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents her from performing her past work and the full range of other available work, the Secretary must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform.[36]

The Fifth Circuit also has held consistently that a Step Two finding that a nonexertional mental impairment is "severe" precludes an ALJ from relying solely

---

[34] *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

[35] *Crowley*, 197 F.3d at 199; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

[36] *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (internal quotation marks and citations omitted); *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

upon the Grid Rules when making the Step Five determination.[37]

In this case, the ALJ held at Step Two that Pedigo had a "severe" nonexertional impairment, namely, bipolar I disorder. He took this impairment into account when assessing her RFC:

> Although claimant has no exertional limitations, I find she has some nonexertional limitations. Given claimant's moderate limitation in concentration, persistence, and pace, I have limited her to non-complex work. Given claimant's difficulty interacting with others, I have limited her interaction with the public and coworkers.[38]

The ALJ therefore found significant nonexertional limitations and, based on these limitations, determined at Step Four that she was unable to perform her past relevant work.[39] He also found that her impairment limited the range of other work available

---

[37] *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) ("We have determined that the ALJ's finding that Mr. Loza's mental impairment was non-severe was [error]. Accordingly, if it should be determined on remand that Mr. Loza's nonexertional mental impairments during the period of disability were not merely a slight abnormality of minimal effect on ability to work, the ALJ's reliance on the Grid Rules at the fifth level also constitutes error and must be reconsidered"). *See White v. Astrue*, 239 F. App'x 71, 73-74 (5th Cir. 2007) ("An ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five"); *Hearne v. Barnhart*, 111 F. App'x 256, 257-58 (5th Cir. 2004) ("In *Loza*, this court linked the definition of a 'severe' impairment at Step Two to the determination of whether a claimant's nonexertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate").

[38] R. 19.

[39] R. 19. At Pedigo's administrative hearing, the ALJ asked the vocational expert a
(continued...)

to her.[40]

Given these determinations, the ALJ erred when he did not produce expert testimony or "similar evidence" to support his Step Five finding that Pedigo was able to perform available jobs in the national economy. The ALJ asked the vocational expert no questions pertaining to the Step Five finding.[41] Instead, his ruling rested on Grid Rule 204:

> Through the date last insured, the claimant's ability to perform work at all exertional levels was compromised by nonexertional limitations. However, these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.[42]

The ALJ explained his decision by further assessing the extent of Pedigo's limitations, stating, "[a]lthough the claimant's ability to respond appropriately to coworkers was limited, there is no evidence of a substantial loss of ability to understand, carry out, and remember simple instructions; respond appropriately to supervision and usual

---

[39] (...continued)
hypothetical question regarding whether an individual with "RFC for light work, non-complex in nature without any interaction with the public and only incidental contact with co-workers" could perform Pedigo's past jobs. The expert replied that she could not. R. 47.

[40] R. 19 (limiting Pedigo to non-complex work with limited interaction with public and coworkers).

[41] R. 47-48.

[42] R. 20.

work situations; and to deal with changes in a routine work setting," and thus concluding that her limitations "only slightly eroded the potential occupational base."[43] However, given his finding at Step Two that Pedigo's impairment was severe, Fifth Circuit precedent required him to support his Step Five conclusion with expert testimony or other similar evidence.[44]

Because the ALJ erroneously relied solely on the Grid Rules at Step Five, his finding was not supported by substantial evidence and remand is appropriate.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 9] is **GRANTED**. This case is **REMANDED** to the Commissioner for further proceedings in accordance with this opinion. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 11] is **DENIED**.

A separate order of remand will issue.

SIGNED at Houston, Texas, this **27th** day of **September, 2010**.

Nancy F. Atlas
United States District Judge

---

[43] R. 20.

[44] *White*, 239 F. App'x at 73-74; *Loza*, 219 F.3d at 399; *Fields*, 805 F.2d at 1170.